In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00147-CV


______________________________





IN THE MATTER OF THE MARRIAGE OF


CHARLIE F. MCADAMS AND LESA MCDOWELL MCADAMS





 


On Appeal from the 402nd Judicial District Court


Wood County, Texas


Trial Court No. 2006-778




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Lesa McDowell McAdams, appellant, has filed with this Court a motion to dismiss her
appeal pursuant to Rule 42.1(a) of the Texas Rules of Appellate Procedure. See Tex. R. App. P.
42.1(a). The motion is signed by the appellant.

 We grant the appellant's motion and dismiss the appeal. 



 Bailey C. Moseley

 Justice


Date Submitted: June 2, 2008

Date Decided: June 3, 2008



 findings of fact and conclusions of law she requested.

 We first address Richard's contention that the trial court erred by applying Tex. Fam.
Code Ann. § 145.013 in its order and ordering that child support must be paid out of
Richard's estate in the event of his death. Richard is actually referring to Tex. Fam. Code
Ann. § 154.013 (Vernon 2002). That section is effective for modification or enforcement
proceedings commenced on or after September 1, 2001, and among other things provides
that the Texas Probate Code does not control over the disposition of an estate when child
support is involved. Richard argues that, because this modification/enforcement
proceeding was commenced well before that date, the trial court erred by including such
language in its order. 

 Richard is correct. This proceeding was commenced on a date before the effective
date of the statute. Thus, the trial court erred by including such language in its order of
July 30, 2002, and we order the language deleted from the order. 

 Richard next contends the court erred by not ordering Lee Ann to pay costs ordered
by the Sixth Court of Appeals in its mandate on two of the previous appeals and by
refusing to award attorney's fees to Richard for successfully defending those appeals in
spite of a provision in the modified final (trial court) judgment awarding such fees to the
prevailing party. (3) Those issues were presented to the trial court by written motion. The
trial court did not expressly address those claims.

 Once acquired, this Court has full jurisdiction, authority, and power to dispose finally
of the case on appeal and to enforce its mandate. In re Cantrell, 97 S.W.3d 722, 723 (Tex.
App.-Texarkana 2003, no pet. h.); Varner v. Koons, 888 S.W.2d 511, 513 (Tex.
App.-El Paso 1994, orig. proceeding); Witherspoon v. Daviss, 163 S.W. 700, 703 (Tex.
Civ. App.-Austin 1914, orig. proceeding). When an appellate court affirms the judgment
of a trial court or renders a judgment the trial court should have rendered, that judgment
becomes the judgment of both courts. Cook v. Cameron, 733 S.W.2d 137, 139 (Tex.
1987). The appellate court's mandate is "official notice of the action of the appellate court,
directed to the court below, advising it of the action of the appellate court and directing it
to have its judgment duly recognized, obeyed, and executed." Lewelling v. Bosworth, 840
S.W.2d 640, 642 (Tex. App.-Dallas 1992, orig. proceeding). Therefore, "[w]hen an
appellate court affirms a judgment, upon issuance of its mandate the trial court has the
duty to give effect to the judgment by executing proper orders." Harris County Children's
Protective Servs. v. Olvera, 971 S.W.2d 172, 175 (Tex. App.-Houston [14th Dist.] 1998,
pet. denied) (quoting Myers v. Myers, 515 S.W.2d 334, 335 (Tex. Civ. App.-Houston [1st
Dist.] 1974, writ dism'd)); see also Los Campeones, Inc. v. Valley Int'l Props., Inc., 591
S.W.2d 312, 315 (Tex. Civ. App.-Corpus Christi 1979, no writ) (stating when appellate
court affirms judgment of trial court, clerk of trial court must remove case from docket
immediately on return of mandate and trial court must give effect to judgment by executing
it through proper orders and process). The trial court has no discretion to review, interpret,
or enforce the appellate court's mandate but, instead, it must carry out the mandate. 
Olvera, 971 S.W.2d at 175-76. The trial court's orders carrying out the mandate are merely
"ministerial." Id. at 175; Madeksho v. Abraham, Watkins, Nichols & Friend, 112 S.W.3d
679, 685 (Tex. App.-Houston [14th Dist.] 2003, no pet. h.).

 The mandates to which Richard directs our attention do not provide that costs or
attorney's fees are to be paid to him. The 1994 judgment, however, does contain clear
language providing that, in the event of an appeal from that judgment, the party
unsuccessfully appealing would be responsible for reasonable attorney's fees incurred by
the party defending the appeal. As Lee Ann was the unsuccessful appellant, the language
of that judgment makes Richard's reasonable attorney's fees for defense of the appeal her
responsibility. 

 However, the judgment does not specify the amount of such fees, and we are
directed to no location in this voluminous record where a determination of the amount of
such fees appears. Accordingly, we find the trial court did not err by declining Richard's
request to order such relief. The contention is overruled.

 Richard further contends the court erred by refusing to grant a permanent injunction,
in place of the temporary injunction which it did issue, to prevent Lee Ann from executing
on his property. 

 Appellate review of a trial court order granting or denying a permanent injunction is
strictly limited to a determination of whether the trial court has committed a clear abuse of
discretion. Risk Managers Int'l, Inc. v. State, 858 S.W.2d 567, 569-70 (Tex. App.-Austin
1993, writ denied); Priest v. Tex. Animal Health Comm'n, 780 S.W.2d 874, 875 (Tex.
App.-Dallas 1989, no writ). A clear abuse of discretion in denying injunctive relief arises
only when the trial court's decision is not supported by some evidence of substantial and
probative character. GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet, 61 S.W.3d 599, 620
(Tex. App.-Houston [14th Dist.] 2001, pet. denied).

 Richard contends the court abused its discretion by failing to make the injunction
permanent because the May 12, 1992, judgment on which Lee Ann sought to execute to
obtain payment for three months of "temporary spousal support" is invalid. That judgment
was the subject of an earlier appeal in which we affirmed the divorce, conservatorship, and
child support issues but, because of the denial of the right to a jury trial, we reversed the
judgment of the trial court in all other respects. Grossnickle v. Grossnickle, 865 S.W.2d
211, 213 (Tex. App.-Texarkana 1993, no writ). After remand, Lee Ann waived her right
to a jury trial and a different judge entered a new property division which was the subject
of her appeal in Grossnickle v. Grossnickle, 935 S.W.2d 830 (Tex. App.-Texarkana 1996,
writ denied). 

 The judgment setting out the second property division, rendered in October 1994,
states that all parts of the previous judgment (except for divorce, conservatorship, and child
support) were withdrawn. This would necessarily include the prior order of spousal
support, which was not provided for in that judgment. Her 1996 appeal did not address
that aspect of the 1994 judgment. Accordingly, with the exceptions noted above, the 1992
judgment has been replaced by the 1994 judgment, and there is no judgment awarding
spousal support on which to predicate the execution which she sought. The trial court
correctly granted a temporary injunction, and we conclude from this posture of the case
that it should have granted the permanent injunction sought by Richard. We find the court
abused its discretion by failing to do so.

 In connection with this issue, Lee Ann has also raised a point of error in her
separate appeal in which she contends the temporary injunction, as written, is inadequate
to be enforceable because it does not explain its ruling or set a trial date. Tex. R. Civ. P.
683 does not expressly require that a trial date be set. Rather, it simply provides that the
injunction order set the cause for trial on the merits. This is effectively the same as
requiring a specific trial date to be set in the order. See EOG Res., Inc. v. Gutierrez, 75
S.W.3d 50 (Tex. App.-San Antonio 2002, no pet.); Henke v. Peoples State Bank, 6 S.W.3d
717, 721 (Tex. App.-Corpus Christi 1999, pet. dism'd w.o.j.); Moreno v. Baker Tools, Inc.,
808 S.W.2d 208, 210 (Tex. App.-Houston [1st Dist.] 1991, no writ).

 In this case, there are two directives. The July 26, 2002, order grants a temporary
injunction enjoining Lee Ann from executing a writ, subject to posting of bond by Richard
of $25,000.00, representing the original judgment of $7,500.00 and accrued interest. The
September 23, 2002, findings of fact state Richard is entitled to injunctive relief staying
execution for the amount because "such would have terminated upon granting of the
divorce or was reversed by the Court of Appeals in prior opinion."

 The temporary injunction of the order is inadequate because it does not set a date
for hearing. The findings, however, explain the reasons why a permanent injunction should
have been granted, as we have set out above. 

 Accordingly, although the language granting the temporary injunction was
incomplete, the record reflects the matter was discussed and explored at length at the
various hearings, and the court's ruling is explicitly based on the previous opinions and
mandates rendered in the multiple prior proceedings in this case. We have concluded the
trial court should have granted a permanent injunction-as it appears that it intended to do
through its findings. Further, in the event of a conflict between findings of fact and a
judgment, the findings control. Tex. R. Civ. P. 299a. Accordingly, we remand to the trial
court for entry of an injunction to that effect.

 Richard raises several arguments in support of his general contention that the
amount of child support set by the trial court is improper. In its order, the trial court:
1) raised child support payments from $1,500.00 per month to $2,000.00 per month; and

2) required Richard to pay one half of the costs for the child to attend Hockaday School for
Girls, a private school in Dallas.

 The Family Code allows a trial court to modify a child support order on the showing
that the circumstances of the child or a person affected by the order have materially and
substantially changed since the order was signed. Tex. Fam. Code Ann. § 156.401(a)(1)
(Vernon 2002). In a modification proceeding, the trial court compares the financial
circumstances of the child and the affected parties at the time the support order was
entered with their circumstances at the time the modification is sought. Holley v. Holley,
864 S.W.2d 703, 706 (Tex. App.-Houston [1st Dist.] 1993, writ denied). The movant has
the burden to show a material and substantial change by a preponderance of the evidence.
In re Z.B.P., No. 2-02-407-CV, 2003 WL 21283173, at *6 (Tex. App.-Fort Worth June 5,
2003, no pet.); Holley, 864 S.W.2d at 706.

 Richard does not argue there has been a failure of evidence to show the
circumstances of the child have changed. (4) He does argue at length that the evidence does
not support the amount of child support awarded and also that the order to pay one half
of the Hockaday expenses is too vague to be enforceable, because the amount is
presently unknown to him and may change dramatically from year to year. That argument
is based on evidence showing the child has received an $8,000.00 scholarship toward the
2002-03 year's tuition and that total nonresident tuition is in the neighborhood of
$15,000.00 annually. Richard also emphasizes the fact that the additional cost is, even
though otherwise entitled, effectively a substantial increase in the amount of child support
he is required to pay.

 In our review, we accord broad discretion to the trial court in setting and modifying
child support payments and, absent a clear abuse of that discretion, we will not disturb the
court's order. In re P.J.H., 25 S.W.3d 402, 405 (Tex. App.-Fort Worth 2000, no pet.);
DuBois v. DuBois, 956 S.W.2d 607, 610 (Tex. App.-Tyler 1997, no pet.); Stocker v.
Magera, 807 S.W.2d 753, 754 (Tex. App.-Texarkana 1990, writ denied). The test for
abuse of discretion is whether the court acted arbitrarily or unreasonably, that is, without
reference to guiding rules and principles. Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex.
App.-San Antonio 1995, writ denied). In making this determination, we must view the
evidence in the light most favorable to the trial court's actions and indulge in every legal
presumption in favor of the judgment. Id. If there is some probative and substantive
evidence to support the judgment, the trial court did not abuse its discretion. Id.

 The guiding rules and principles for this analysis are embodied by the Family Code
in Chapter 154. When ruling on child support matters, including a requested modification,
the trial court may consider, among other factors: (1) the needs of the child; (2) the ability
of the parents to contribute to the child's support; (3) any financial resources available for
the support of the child; and (4) the amount of possession of and access to the child. Tex.
Fam. Code Ann. § 154.123 (Vernon 2002). If a parent's net resources exceed $6,000.00
per month, the court shall "presumptively" apply the percentage guidelines to the first
$6,000.00 of the parent's net resources. Tex. Fam. Code Ann. § 154.126 (Vernon 2002);
Zorilla v. Wahid, 83 S.W.3d 247, 253 (Tex. App.-Corpus Christi 2002, no pet.). The court
may further order additional amounts of child support as appropriate, depending on the
income of the parties and the proven needs of the child. Tex. Fam. Code Ann. § 154.126;
Zorilla, 83 S.W.3d at 253. 

 In making a determination of whether applying the Family Code guidelines would
be unjust or inappropriate under the circumstances, the trial court shall consider evidence
of all relevant factors. Tex. Fam. Code Ann. § 154.123(b). When making such a
determination, in addition to the factors enumerated above, the trial court must also
consider such factors as whether the obligor or obligee has an automobile, housing, or
other benefits furnished by another person; the earning potential of the obligee if the actual
income of the obligee is significantly less than what the obligee could earn because the
obligee is intentionally unemployed or underemployed; provision for healthcare insurance
and payment of uninsured medical expenses; and any other reason consistent with the
best interest of the child, taking into consideration the circumstances of the parents. Id. 
These factors, however, are not exclusive, and a trial court may consider any other factor
it deems relevant in determining the amount of child support. Z.B.P., 2003 WL 21283173,
at *8; Sanchez v. Sanchez, 915 S.W.2d 99, 102-03 (Tex. App.-San Antonio 1996, no writ). 

 The difficulty in assessing the award of child support in this case, as recognized by
the trial court in its findings-and as is apparent from the record of the hearing-arises from
several sources.

 First, evidence of Richard's available resources is not comprehensive, and the
parties have such animosity for each other they spent much more time either rehashing
real or imagined injuries and real or imagined resources from years past than in actually
providing the information needed by the trial court to make its decision.

 Second, definitive evidence of Lee Ann's income is virtually nonexistent. She
testified that she had not filed an income tax return for the year 2000 and that her 2001
return was incomplete at the time of trial in May 2002. The evidence of her other
resources is likewise incomplete.

 Third, Lee Ann appears to have been effectively unemployed by choice for almost
the entire time since the 1992 divorce, having a degree in law but allowing her license to
practice law to go inactive, and failing to obtain other stable employment.

 Fourth, Lee Ann's evidence of the cost of the Hockaday school is extremely general
in nature, as shown by the trial court's global directive to pay one half of the costs rather
than any specific amount.

 Fifth, the required payment by Richard of half the costs for the child to attend
Hockaday, though categorized separately, is necessarily a form of child support. From the
findings of the trial court, we cannot calculate that amount, but the evidence concerning
tuition alone shows it would be equivalent to roughly $300.00 per month. (5) (Calculated as
$15,000.00 - $8,000.00 = $7,000.00 / 12 = $583.33 / 2 = $291.67.)

 Further, we cannot even make a generalized guess at the amount Richard will be
required to pay for following years, because we cannot know whether the $8,000.00
scholarship will be renewed. If it is not, then the amount he would be required to pay for
tuition increases to approximately $625.00 per month, assuming no increase in tuition by
the school. 

 There is evidence that Richard had extensive land-based assets that were valued
at slightly over a million dollars in 1999 and that Lee Ann had assets in an amount of over
$800,000.00 that were set aside to her in the original divorce. (6) We recognize there is
evidence Richard suffered substantial losses in stock market investments, but that also
does not factor into any analysis of his present cash flow or extant assets. 

 The recurrent problems with ascertaining assets in this case are highlighted by the
haphazard presentation of an enormous amount of information about present and past
income, assets, and depreciation, imparted to the trial court by the parties. The trial court
obviously relied to some extent on Richard's 1998-2000 tax returns (which were the most
recent available at the time of the hearing) to show his net income (and without
consideration of losses from his farm/ranch operation) and thus as a basis to calculate the
proper amount of child support. The court used that information to average Richard's
income and to determine that his income was $136,077.00 annually. 

 Accordingly, the court concluded Richard's available monthly net resources are
$11,340.00 and ordered child support of $2,000.00 per month, which is 17.6% of his net
resources. That award does not, however, include the cost of tuition at Hockaday school,
which creates an additional charge of approximately $300.00 per month. With this
additional charge, Richard is liable to pay, under the terms of this child support order,
approximately $2,300.00 per month, or 20.3% of the stated net resources available. 

 We recognize that, when monthly net resources exceed $6,000.00, the court is
required to apply the percentage guidelines set out by the Code to that first amount, but
then the statute gives the court the specific discretion to, "[w]ithout further reference to the
percentage recommended by these guidelines . . . order additional amounts of child
support as appropriate, depending on the income of the parties and the proven needs of
the child." Tex. Fam. Code Ann. § 154.126. The Texas Supreme Court has read this
statute to conclude that the "needs of the child" include more than bare necessities of life
and that courts must follow the paramount guiding principle of "the best interest of the
child" in determining the proper award. Rodriguez v. Rodriguez, 860 S.W.2d 414, 417 n.3
(Tex. 1993). 

 We also recognize Richard's federal tax returns reflect substantial losses in his farm
and ranch operations that, on those returns, reduces his net income by half-and that this
was not taken into account in determining his net income. However, we cannot say the
trial court abused its discretion in failing to take such losses into account under the
circumstances of this particular case, because it appears the Family Code does not require
the adjustment of an obligor's net income for losses incurred in pursuit of secondary
business operations. See Tex. Fam. Code Ann. §§ 154.062, 154.065(b) (Vernon 2002). 
Further, we recognize, as did the trial court in its findings, that Richard had prepaid debt
service on part of the operation and that he owned a substantial amount of property as a
result of his business operations. 

 The trial court, as sole judge of the credibility of witnesses, may choose whether to
believe a particular witness. See Fanning v. Fanning, 828 S.W.2d 135, 150 (Tex.
App.-Waco 1992), aff'd in part, rev'd & remanded in part on other grounds, 847 S.W.2d
225 (Tex. 1993)). As did the court in Scott, we do not "now state that 'needs of the child'
can encompass even the most extravagant demands." Scott v. Younts, 926 S.W.2d 415,
422 (Tex. App.-Corpus Christi 1996, writ denied). 

 However, determining what constitutes such extravagance is typically a matter of
discretion and, given the broad discretion allowed to courts to determine the needs of the
child, we cannot conclude the court abused that discretion in raising the child support
payments from $1,500.00 per month to $2,000.00 per month. There was evidence about
the current expenses for the child that well exceeded that amount. See Thomas v.
Thomas, 895 S.W.2d 895, 897-98 (Tex. App.-Waco 1995, writ denied) (court modified
support where movant introduced household budget based on expenses for prior year as
evidence of increased needs). In the context of this income level, the court is statutorily
allowed to allocate the support of the child between parents based on the circumstances
of the parties. Tex. Fam. Code Ann. § 154.126. We therefore affirm that part of the trial
court's order setting the support at $2,000.00 per month.

 We also cannot say the court's order for Richard to pay one half the tuition at
Hockaday school was an abuse of discretion. However, there are problems apparent with
this part of the court's order. First, as noted above, the order is not to pay a specific
amount, but to pay an unspecified amount that has the potential to change from year to
year. Second, the order also directs Richard to pay one half of the (after application of the
scholarship amount) "remaining balance for costs of tuition and direct school expenses"
as determined, not by the court, but by the Hockaday financial office.

 This part of the order is for a nonspecific amount and for an amount determined, not
by the court, but by an unrelated entity that is not a party to this litigation. The order then
goes on to say it is enforceable by contempt. 

 A judgment is to end a controversy with the highest degree of exact justice humanly
possible; its terms therefore must be certain and definite. Disco Mach. v. Payton, 900
S.W.2d 71, 73 (Tex. App.-Amarillo 1995, order). Indeed, in most situations, a decree from
which the particular recovery cannot be ascertained is too vague to constitute a final
judgment. H.E. Butt Grocery Co. v. Bay, Inc., 808 S.W.2d 678, 680 (Tex. App.-Corpus
Christi 1991, writ denied). A final judgment must be certain so it can be enforced by writ
of execution. Jones v. Liberty Mut. Ins. Co., 733 S.W.2d 240, 242 (Tex. App.-El Paso
1987, no writ); Giles v. Union Land Co., 196 S.W. 312, 328 (Tex. Civ. App.-Galveston
1917, writ ref'd). 

 This was clearly intended to be a final judgment-or as final as a modification
proceeding in a case of this nature could be-but Lee Ann did not provide the trial court with
sufficient specific information for it to be able to enter an actual award. 

 Further, in this order the court directed an entity which is not a party to this
proceeding to determine reasonable and necessary expenses not covered by the
scholarship and to forward the bill to each party. The trial court cannot order an entity
which is not a party to the suit to take action, and we cannot approve of the court's
delegation of its authority to define "reasonable and necessary" expenses to a nonjudicial
entity. 

 Finally, we also note this order would not be enforceable through contempt
proceedings, because it is insufficiently certain. 

 It is an accepted rule of law that for a person to be held in contempt
for disobeying a court decree, the decree must spell out the details of
compliance in clear, specific and unambiguous terms so that such person will
readily know exactly what duties or obligations are imposed upon him. 


Ex parte Slavin, 412 S.W.2d 43, 44 (Tex. 1967); see Ex parte Price, 741 S.W.2d 366, 367
(Tex. 1987). This part of the court's order does not specify an amount to pay or a date on
which it is due, or whether it may be paid in installments or whether a lump sum payment
must be made on receipt.

 Under these circumstances, we conclude that, even though the increase to
$2,000.00 in child support payments is supportable under the record, the portion of the
order directing Richard to pay one half of an unascertainable amount is too vague to be
enforceable. Accordingly, we reverse this portion of the support order to the trial court for
further proceedings.

 Richard also contends the court erred by failing to adjust his net resources self-employment tax as a proper adjustment to his net income from his medical practice. Tex.
Fam. Code Ann. § 154.062(d)(1) provides specifically that the court shall deduct social
security taxes from income in determining net resources. That adjustment was not made
by the trial court, as shown by its findings of fact. This is error. The amount of money
involved is approximately $3,200.00, which would have reduced Richard's net business
income of $109,252.00 in his 2000 tax return. We are not convinced in this particular case
the error was such as to require reversal. The amount involved is not minimal, but in
relation to the amount of income it is not so great as to necessarily cause the court's award
to be unsupportable, especially in light of the discretion given to the trial court to look at
other factors and assets in making its determinations. See In re S.B.C., 952 S.W.2d 15,
18 (Tex. App.-San Antonio 1997, no writ).

 Richard also contends the court erred by failing to impose sanctions on Lee Ann for
her failure to produce her income tax returns pursuant to Richard's requests, as is
specifically required by Tex. Fam. Code Ann. § 154.063 (Vernon 2002). The court
acknowledged her failure in its findings of fact. Richard has not, however, directed this
Court to any order by the trial court to Lee Ann on this topic, and we decline to wade
through a thousand pages of clerk's record in search of the order. (7)

 Richard quite logically complains that, in the complete absence of any evidence
about Lee Ann's income, and in the apparently correct assumption that she remains
unemployed, the trial court could not reasonably have concluded she had resources of
$2,500.00 per month. In her "response" to this contention of error, Lee Ann does not
address the point in any respect. Accordingly, we must conclude Richard is correct in his
statement of facts concerning the state of the evidence on this point. Tex. R. App. P.
38.1(f). 

 Nonetheless, we review a trial court's decision relating to discovery sanctions for an
abuse of discretion. See Bodnow Corp. v. City of Hondo, 721 S.W.2d 839, 840 (Tex.
1986); Pape v. Guadalupe-Blanco River Auth., 48 S.W.3d 908, 912 (Tex. App.-Austin
2001, pet. denied). We reverse the trial court only when we find the court acted in an
unreasonable or arbitrary manner, or without reference to any guiding rules or principles. 
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985).

 In this case, we have no order to review. Thus, although Lee Ann was absolutely
required to provide this information, we cannot find that any abuse by the trial court existed. 
The contention of error is overruled.

 Richard contends in two separate points of error the court erred by not applying the
child support guidelines, in light of the inadequacy of the evidence of the assets and
income of both he and Lee Ann. See Tex. Fam. Code Ann. §§ 154.122-.123 (Vernon
2002). We addressed this matter in connection with the court's determination of support
payments. The contentions are overruled.

 Richard contends the court erred in its findings of fact by stating he had real estate
holdings worth $1,050,000.00 in 1999. He points out that there have been no formal
appraisals done since 1991 and that his loan application from which the figures were taken
was only an approximation. He also states he no longer owns part of the property because
it was sold in 2001 and 2002 so he could cover margin calls on stock purchases that
suffered a major decline. 

 He states that the evidence, in the form of his financial statement as ordered
prepared by the court, shows he now owns only his ranch and the building in which he
practices medicine. He further contends that the evidence shows he had to sell and move
out of his house and into a 1,700 square foot two-bedroom house on the ranch, that he
also had to sell a commercial lot to pay for his stock market losses, and that he still owes
over $40,000.00 on his brokerage account. He also states he was forced to sell shares
in two limited partnerships, a large herd of registered cattle, and finally his small
commercial herd of cattle. Based on all of these facts, he states that his financial reports
showed at the hearing that the remaining real estate holdings were valued at only
$358,660.00. 

 Richard has not directed this Court to any location in the record to support his
statements, and we decline to wade through this record in search of evidence to support
his positions. The contention of error is overruled.

 Richard further contends the trial court erred by awarding Lee Ann $4,738.00 for
medical bills incurred during a two-month lapse of insurance coverage in March and April
2001. However, Tex. Fam. Code Ann. § 154.188 (Vernon 2002) provides that, when a
parent ordered to provide health insurance fails to do so, that parent is liable for necessary
medical expenses of the child. Thus, the initial issue is whether there is evidence the
expenses were necessary. 

 The court had before it testimony about the nature of the treatment (allergies,
orthodontic braces, contact lenses). Richard essentially argues these bills were not
necessary because this elective medical care was incurred because Lee Ann discovered
the coverage had lapsed and successfully hurried to inflict as much monetary damage on
him as possible before he could obtain replacement insurance. The court found the
services to be elective rather than emergency. Although Richard's scenario is entirely
possible, given the nature of the acrimony between the parties, and in light of the court's
findings that the expenses incurred were for elective rather than emergency conditions, we
are not prepared to hold the trial court erred by concluding the expenses were "necessary"
and directing payment of the outstanding bills.

 There is also an apparent problem with the amount of the award. The July 30 order
directs payment of $4,378.00. The conclusions of law recite that a payment of $4,738.00
was ordered, and further state that the medical providers were Dr. Wharton Palmer, Flint
Physical Therapy, Texarkana Eye Associates, and Wadley Regional Medical Center. 
Neither party has directed this Court to locations in the record to support either award. The
exhibits, however, show that Dr. Palmer billed $2,880.00, Flint Physical Therapy billed
$125.00, Texarkana Eye Associates billed $223.00 and $60.00, and Wadley Regional
Medical Center an unknown amount, apparently shown by Plaintiff's Exhibit 37, which is
not part of the record before this Court. 

 Tex. R. App. P. 34.6 provides for the use of a partial record and also provides a
presumption that the record is the entire record for purposes of reviewing stated issues,
even if the issue complains of the insufficiency of evidence to support a specific finding. 
The scope of this rule is quite narrow, and Richard has failed to successfully traverse it. 
His notice of limitation of appeal was clearly intended to limit the scope of his appeal in
connection with the partial record which he requested and does specify a number of
contentions of error that have been addressed in his brief. However, he did not complain
in that document about the sufficiency of the evidence to support the award set out above. 
Accordingly, the presumption does not apply. The record is missing an item critical to our
determination of the issue, and we cannot presume error.

 Based on this record, we cannot determine which figure is accurate. In the event
of a conflict between findings of fact and a judgment, the findings control. Tex. R. Civ. P.
299a. 

 The order also states Richard is to pay ninety percent of the amount of the total of
these medical bills, which is the percentage set out in the divorce decree. Lee Ann argues
she should receive the full 100 percent contemplated by Tex. Fam. Code Ann. § 154.188
instead because Richard had allowed insurance coverage to lapse at the time the charges
were incurred.

 We have reviewed the findings. As noted above, in the event of a conflict between
findings and a judgment, the findings control. The findings order payment of the full
amount without reduction. The situation complained of by Lee Ann in this respect therefore
does not exist, and we need not address the question of whether the statute or divorce
decree controls in this situation. Under the conclusions of law, Richard is to pay the full
amount of these bills ($4,738.00). The contention of error is overruled.

 Richard next contends the trial court erred by not finding Lee Ann a vexatious litigant
as defined by Tex. Civ. Prac. & Rem. Code Ann. §§ 9.001, et seq., 10.001, et seq., 11.001,
et seq. (Vernon 2002). Section 11.054(2) specifically provides that a court may find a party
a vexatious litigant if the party repeatedly relitigates a cause of action, claim, or controversy
that has been previously decided. Richard argues that Lee Ann's motion for summary
judgment dated April 11, 2002, contains issues that had previously been ruled on by any
number of previous courts, both at the trial and appellate level. That motion is part of the
appellate record. 

 Although he has not specified the "issues" about which he complains, it is apparent
from the argument and the underlying motion that part of his complaint is about the
temporary spousal support discussed earlier in this opinion. Clearly that was a matter
which has been litigated to a final decision through the appellate process and should not
have been brought forward again. 

 Nonetheless, the "vexatious litigant" statute applies only when filed within ninety
days after the date on which a defendant files his or her original answer. It cannot apply
on its face to this situation. See Tex. Civ. Prac. & Rem. Code Ann. § 11.051. Accordingly,
the trial court did not err by failing to apply the statute to this situation.

 Lee Ann has filed her own, separate appeal. She first complains about the stay of
execution for temporary spousal support. We have addressed and decided that issue
above. 

 Lee Ann also contends the trial court erred by advising the parties that limitations
had run with regard to seeking reimbursement for a group of medical expenses. She
directs this Court to no ruling to that effect, however, and has directed our attention to no
order to correct in that regard.

 She goes on to complain the court erred by finding Richard did not have to pay an
additional $1,428.32 in medical expenses, because he had already paid it. She argues
there is no evidence to support this finding. She also complains the court erred by denying
her request for a third group of medical expenses, but has directed this Court to no ruling
in that respect which we might review. 

 In connection with the $1,428.32 billing, Richard testified he had paid the portion of
that for which he was liable by tendering a check several years previously. (8) It was within
the prerogative of the fact-finder to conclude that his testimony was correct. 

 Lee Ann next contends in a broadly executed point of error that the order by the trial
court, despite language of finality, did not actually (explicitly) dispose of her claims seeking: 
1) damages from Richard for delays in transfers of assets from 1992 to 1996;
2) reimbursement by Richard for taxes paid on jointly owned realty; and 3) the "original"
(emphasis hers) medical expenses.

 Her complaint is predicated on her motion for summary judgment, which was
denied. She sets out her argument as a contention that the court never really heard those
issues or ruled on them, and then proceeds into an extensive discussion of summary
judgment law and finality.

 That review is not relevant. The order on appeal was issued following multiple
hearings at which evidence was taken and both of the pro se parties testified, with the
introduction of reams of documentary evidence. As stated by the Texas Supreme Court,
the presumption that a judgment rendered after a conventional trial on the merits is final
and appealable has proved fairly workable for nearly a century. Lehmann v. Har-Con
Corp., 39 S.W.3d 191, 199 (Tex. 2001). Although support and modification hearings are
somewhat different from a typical trial, especially in this particular case, because of the
continuing nature of the litigation, the general rule fits well enough here. Hearings were
noticed, the parties appeared with evidence, the court heard the evidence and ruled. That
is sufficient. The contention of error is overruled.

 Lee Ann also contends under this point of error the trial court erred by refusing to
enter her requested additional findings of fact and conclusions of law. Following a proper
request and reminder, it is mandatory for a trial court to make and file findings of fact and
conclusions of law. Cherne Indus., Inc. v. Magallanes, 763 S.W.2d 768, 772 (Tex. 1989). 
The failure to respond where all requests have been made is presumed harmful, unless
the record affirmatively shows no injury. Id.; see also Tenery v. Tenery, 932 S.W.2d 29,
30 (Tex. 1996). The appropriate question in determining harm is whether a party will be
forced to guess the reason or reasons the trial court ruled against that party. City of Los
Fresnos v. Gonzalez, 830 S.W.2d 627, 629 (Tex. App.-Corpus Christi 1992, no writ).

 However, the trial court need only enter findings, or additional findings, on ultimate
or controlling issues, rather than on mere evidentiary issues. In re Marriage of Edwards,
79 S.W.3d 88, 94 (Tex. App.-Texarkana 2002, no pet.); see Lifshutz v. Lifshutz, 61 S.W.3d
511, 515 (Tex. App.-San Antonio 2001, pet. denied); Hill v. Hill, 971 S.W.2d 153, 155 (Tex.
App.-Amarillo 1998, no pet.); Gutierrez v. Gutierrez, 791 S.W.2d 659, 667 (Tex. App.-San
Antonio 1990, no writ). 

 Lee Ann complains generally the court should have utilized her requested findings,
but she does not specify her complaint in any respect. This is not a situation where no
findings were prepared by the trial court, and it is apparent her requested findings were
before the court. 

 We have, nonetheless, reviewed her requests. We note, in passing, that her
proposed "findings" are more in the nature of comments on the evidence than actual
findings, but will address them as best we can. (9) 

 Her request for a finding on medical claims is nothing more than an argument the
award is contrary to the evidence. Her request for a finding on her own assets is an
argument the finding is contrary to the evidence. The trial court is not required to make
additional findings that are unsupported in the record or that are contrary to other previous
findings. Edwards, 79 S.W.3d at 95; Grossnickle, 935 S.W.2d at 838.

 Lee Ann's request for a finding directing Richard to pay 100 percent rather than
ninety percent of the medical claims incurred while the child was uninsured is a matter
addressed above, and her position is that taken by the trial court in its findings. 

 She also asked the court to enter a finding that Richard had no interest in visitation
with the child and had been contacted repeatedly for such visitation. That requested
"finding" was irrelevant to the matters before the court. 

 She also asked the court to make findings she had never participated in any
outbursts or been rude to the court and that the court had itself flown into a rage toward
her, that the court had refused to rule for two years, had rescheduled hearings eleven
times, had threatened to jail Lee Ann without cause, talked with other attorneys about the
case, shouted its intentions from the hallway, and made findings and conclusions not
consistent with the evidence. As noted above, the appropriate question in determining
harm from a failure to enter otherwise proper additional findings is whether a party will be
forced to guess the reason or reasons the trial court ruled against that party. City of Los
Fresnos, 830 S.W.2d at 629. The court's decision not to enter such findings has no impact
on Lee Ann's ability to recognize and address its rulings.

 Lee Ann also asked for findings about the temporary spousal support discussed
above that would have had the effect of ordering payment of the support. That matter was
sufficiently addressed by other findings to allow it to be effectively appealed.

 Finally, Lee Ann asked the court to find Richard's income for 1993. That matter is
entirely irrelevant to this litigation. 

 We find for the reasons stated above that no error is shown by the trial court's
decision not to incorporate the majority of her requested "findings" into the official findings
of the court. The contention of error is overruled.

 In summary, we sustain Richard's contention the trial court erred in ordering that
child support must be paid out of his estate in the event of his death, and the language to
that effect in the order is deleted. We also sustain Richard's contention the trial court erred
in refusing to grant a permanent injunction prohibiting Lee Ann from executing on his
property to collect unpaid temporary spousal support and, on remand, we order the trial
court to enter such injunction. We reverse that portion of the trial court's modification of
child support requiring Richard to pay one half of the costs for the child to attend a private
school and remand for a new determination of that part of the modification. All of Richard's
other points of error are overruled. All points of error raised by Lee Ann in her separate
appeal are overruled. 

 The judgment of the trial court is affirmed in part, reversed in part, and remanded
to the trial court in part for further proceedings consistent with this opinion.




 Donald R. Ross

 Justice


Date Submitted: August 12, 2003

Date Decided: August 25, 2003

1. He also filed a notice of limitation of appeal in which he specified the contentions
of error which would be raised by his brief.
2. This divorce has thus far spawned four appeals and seven mandamus proceedings
since 1992, and the record in each proceeding has reflected an enormous number of
filings, as well as a pattern of failure to abide by the rules of court by both parties over a
period of eleven years.
3. That judgment was signed October 31, 1994, by a previous judge in this ongoing
litigation. 
4. He does suggest that the change in the child's educational path was made for
ulterior motives.
5. This type of expense differs from costs for medical support, which is by statute
excluded from consideration in setting child support. Tex. Fam. Code Ann. § 154.064
(Vernon 2002).
6. In making this determination, we entirely disregard Lee Ann's emphasis on the
"correct" amount of Richard's income during years dating back to the date of the divorce. 
That information is not relevant to this determination, which is necessarily based on the
assets at the present time rather than real or imagined assets that may have existed in
1996 or 1997, save only as it might relate to a loss or increase in value at the present time. 
7. Richard does refer to a discovery order of June 20, 2002, but there does not
appear to be such an order in this record.
8. He also testified the check had never been cashed and he presumed that was
because the amount he had tendered was not as much as Lee Ann had claimed. We
acknowledge that the finding states payment was tendered in 1992, but must conclude,
based on the context, that this recitation is a mistake, because the evidence shows the
payment was made several years later.
9. In its order, the court stated that "all relief requested in this case and not expressly
granted is denied. All other terms of the prior orders not specifically modified in this order
shall remain in full force and effect." In its findings, the court stated that, "Any remaining
claims are denied by res judicata by prior hearings wherein relief has previously been
denied or resolved by judgment of the Court of Appeals."