

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00046-CV

IN THE MATTER OF THE MARRIAGE OF
ANGELA LYNN LEWIS AND MARTIN PAUL LEWIS

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 18-D-0158-CCL

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

As a result of Angela Lynn Lewis's petition for divorce from her husband, Martin Paul Lewis, the trial court granted a "no-fault" divorce in accordance with Section 6.001 of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 6.001. In dividing community property, the trial court (1) awarded each party their own retirement accounts and two horses, (2) awarded Martin a Ford Fusion and the "cheaper of the two horse trailers," (3) awarded Angela a "2007 truck" and the "more expensive of the two horse trailers," and (4) assigned responsibility for any debts associated with the property they were awarded. In addition, the trial court found Martin responsible for Internal Revenue Service (IRS) debt associated with early withdrawals from his retirement account, which he secreted from Angela and failed to report on their joint tax return. However, the court ordered the parties to split the fees for the certified public accountant (CPA) who assisted Angela in receiving innocent spouse relief from the IRS.

On appeal, Angela argues that the trial court erred in failing to enter findings of fact and conclusions of law and that its division of community property was inequitable because (1) Angela should have received half of the remaining balance of Martin's retirement account since he made early withdrawals from the account, (2) Martin should have been required to pay all of the CPA's fees, (3) Angela should have been awarded the Ford Focus, and (4) the trial court should have found Martin liable for tax delinquencies for every year of their marriage. We find that the lack of findings of fact and conclusions of law did not result in harmful error and that the trial court's division of community property was not an abuse of discretion. Accordingly, we affirm the trial court's judgment.

2

## I.      The Evidence at Trial

Martin and Angela married in 2004.  In 2011 or 2012, Martin retired from his job at Fay-J Packaging, where he had worked since approximately 1987.  At the time of his retirement, the value of his retirement annuity was $234,000.00.  Unbeknownst to Angela, Martin began withdrawing sums from his retirement account to pay for rent, pay a $15,000.00 loan and other debts, build a barn, buy horses, and purchase pest control equipment to start his own business. Martin testified that he continued to withdraw money even when he was working because he could not cover the bills.  Angela testified that Martin transferred hundreds of dollars into their joint account to pay household bills and expenses associated with the care of their four horses.  Angela also testified that Martin built a barn on property that they were renting, which cost $2,300.00 in materials.  By the time of trial, Martin had drawn his retirement account "down to about [$]50,000."

Martin admitted that he hid the withdrawals from his retirement account from Angela, that he did not report them on joint tax returns for several years, and that as a result, the parties owed the IRS approximately $20,000.00.  Although their tax returns were always filed jointly, Angela testified that she had never signed a tax return since the beginning of their marriage.  Angela also testified that she was shocked when she discovered notices of deficiencies from the IRS for 2008, 2012, and 2014.

After their separation in 2017, Angela met with Robby Selph, a CPA, who filed for and obtained innocent spouse status from the IRS for Angela for 2008, 2012, and 2014.  Selph testified that Angela also received a deficiency notice for tax year 2015 and was in the process of obtaining

3

innocent spouse status for that year. He informed the trial court of a proposed delinquency for 2016, which had not yet been assessed, and said that Angela would file her 2017 tax return separately. Angela's bill for Selph's services was $3,000.00, and she testified that she wished for Martin to pay those fees.

Although Selph testified that Angela received no benefit from the funds withdrawn from Martin's retirement account, the evidence from Martin and Angela showing that Martin contributed to household bills showed otherwise. In addition to that evidence, Martin also testified that he sent money to Angela after their separation for horse feed, shoeing, and veterinarian bills for the horses, including one bill totaling $2,000.00. Angela admitted that Martin was no longer living in their rental home and that she was benefitting from the barn on the rental property. Notably, there was no evidence showing that the $180,000.00 withdrawn from the retirement account benefited Martin's separate estate as opposed to the community estate.

Angela asked the trial court to award her one-half of the balance in Martin's retirement account after he paid the IRS deficiencies. Angela also testified that she had worked during the entire marriage and that taxes were withdrawn from her paycheck. There was no testimony as to whether Martin or Angela made more money or who had accrued more money in their retirement accounts. She was employed by DeKalb Physicians Clinic for the past three and a half years, had worked for Dr. Michael Saldino for six years before that, and was employed by other doctors and James Bowie Independent School District before that.

When asked about division of other property, Martin testified that he would like to have one of the vehicles that was parked on the rental property occupied by Angela, one of the two

4

horse trailers, and horses Deacon and Boss.[1]  When asked about the vehicles parked on the rental property, Angela testified that there was a Ford Fusion and a Dodge truck, prompting the following discussion:

> Q.     You said you have a Ford truck.  What model is it?
>
> A.     Mine is a Dodge.
>
> Q.     A Dodge truck, I'm sorry.
>
> A.     Mine is a '07.
>
> Q.     2007 truck?
>
> A.     Yes.

In dividing the community property, the trial court provided its ruling and the basis for its ruling in open court, as follows:

> With regards to the division of the marital estate -- let me address the tax liability first and Mr. Selph's testimony with regards to the innocent spouse claims that have been granted by the IRS to the petitioner for the years '08, '12 and '14. There's no reason before the Court to believe that that will not be the case for '15 and '16. So, with regards to tax years '15 and '16, the respondent will be solely responsible for any IRS issues for those two tax years. With regards to '17, Mr. Selph indicated that those tax returns have not been filed yet. Each party will be responsible for their own tax liability for 2017.
>
> Now, with regards to the two vehicles, there [is] little or no evidence with regards to those. The Court is going to award the '07 truck to the petitioner, and the Ford Fusion to the respondent.  With regards to the horse trailers, if there's two horse trailers, the respondent will be ordered -- awarded the cheaper one and his tack.  Boss will be the separate property of the respondent.
>
> . . . .

---

[1]Martin testified that Boss was purchased before the marriage and claimed the horse as his separate property.  While Angela testified that they purchased Boss before the wedding, no one testified about the funds used to purchase the horse.

5

. . . . With regards to the other three horses, the Court is going to award the two unnamed horses to the petitioner, and Decon to the respondent.

The Court is going to award each party the retirement benefits that they've accumulated individually throughout the marriage. . . . Other than that, the Court is going to award each party the property they have in their possession along with any debts associated therewith. Each party will be responsible for any debts or other financial obligations he or she may have incurred since the date of separation. . . . Each party will be responsible equally for one[-]half of that, split -- split the $3,000 Selph debt.

Angela appeals.

## II. The Lack of Findings of Fact and Conclusions of Law Is Not Harmful Error

Angela argues that the trial court erred in failing to issue findings of fact and conclusions of law. The record shows that Angela timely requested findings and timely filed a notice of past due findings. We have held that "[f]ollowing a proper request and reminder, it is mandatory for a trial court to make and file findings of fact and conclusions of law." *Culver v. Culver*, 360 S.W.3d 526, 538 (Tex. App.—Texarkana 2011, no pet.) (quoting *In re Grossnickle*, 115 S.W.3d 238, 253 (Tex. App.—Texarkana 2003, no pet.)). Therefore, "[f]ailing to file findings of fact and conclusions of law was error." *Id.*

However, the error was not harmful. "Although 'harm to the complaining party is presumed unless the contrary appears on the face of the record,' a trial court's 'failure to make findings is not harmful error if "the record before the appellate court affirmatively shows that the complaining party suffered no injury."'" *Id.* (quoting *Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996) (per curiam) (quoting *Cherne Indus. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989); *Las Vegas Pecan & Cattle Co. v. Zavala Cty.*, 682 S.W.2d 254, 256 (Tex. 1984)). "When the trial

6

court announces its reasons for its ruling in open court, the appellant's ability to present the appeal is not harmed because there was no need to guess the reasons for the trial court's adverse ruling." *Id.*

Here, the trial court announced its reasons for the disposition in open court, and we find that those statements provide the basis for its ruling. In short, we are not forced to guess the trial court's reasoning. As a result, we find that the trial court's error was not harmful. *See id.*

## III. The Trial Court's Division of Community Property Was Not an Abuse of Discretion

### A. Standard of Review

The division of community property need not be equal. *Matter of Marriage of Mozley*, No. 06-16-00004-CV, 2016 WL 4256926, at *3 (Tex. App.—Texarkana Aug. 12, 2016, no pet.) (mem. op.). However, it "must be 'just and right, having due regard for the rights of each party.'" *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (quoting Tex. Fam. Code Ann. § 7.001). In determining what division would be just and right,

> courts may consider many other factors, such as
>
> "the spouses' capacities and abilities, benefits which the party not at fault would have derived from continuation of the marriage, business opportunities, education, relative physical conditions, relative financial condition and obligations, disparity of ages, size of separate estates, and the nature of the property."

*Matter of Marriage of Williams*, No. 06-18-00041-CV, 2018 WL 6424245, at *5 (Tex. App.—Texarkana Dec. 7, 2018, pet. denied) (mem. op.) (quoting *Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981)). "The court may consider the 'fault in breaking up the marriage[,'] though the community-property division 'should not be a punishment for the spouse at fault.'" *Bradshaw*, 555 S.W.3d at 543 (quoting *Young v. Young*, 609 S.W.2d 758, 761–62 (Tex. 1980)).

7

"Because the standards for dividing a community estate involve the exercise of sound judgment, a trial court must be accorded much discretion in its decision." *Id.* "The division 'should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair.'" *Id.* (quoting *Hedtke v. Hedtke*, 248 S.W. 21, 23 (Tex. 1923)). "The appellate court cannot merely reweigh the evidence." *Id.* "Accordingly, we will reverse the trial court's judgment only where it 'clearly abused its discretion and if the error materially affects the court's just and right division of the property.'" *Williams*, 2018 WL 6424245, at *4 (quoting *Bigelow v. Stephens*, 286 S.W.3d 619, 620 (Tex. App.—Beaumont 2009, no pet.)). "Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion, but they are not independent grounds of error." *Id.* at *4 n.7 (citations omitted). "If there is any reasonable basis for doing so, we must presume that the trial court properly exercised its discretion." *Id.* at *4.

"The party complaining of the trial court's property division must demonstrate from evidence in the record that the division was so unjust that the trial court abused its discretion." *Id.* "In determining whether an abuse of discretion has occurred, we view the evidence in a light most favorable to the court's decision and indulge every legal presumption in favor of its judgment." *In re Marriage of Ford*, 435 S.W.3d 347, 350 (Tex. App.—Texarkana 2014, no pet.).

**B.    Analysis**

Angela's appeal separately directs us to specific awards of property to Martin and then argues that those specific awards are "inequitable."   Initially, we reject Angela's piecemeal approach to the trial court's property division. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex.

8

1985); *McDonald v. McDonald*, No. 01-00-01160-CV, 2001 WL 778873, at *2 (Tex. App.—Houston [1st Dist.] July 12, 2001, no pet.). Instead, we will look to the entire property division to determine whether Angela can meet her burden to show that the trial court abused its discretion in finding the division just and right.

### 1. The Retirement Accounts

First, Angela argues that she was entitled to one-half of Martin's remaining retirement benefits. Yet, not all of Martin's retirement account was community property. Martin began working at Fay-J Packaging in approximately 1987, and the parties were not married until 2004. At trial, there was no evidence presented to the trial court showing how much of Martin's retirement account was earned before and after the marriage in 2004. Martin testified that he had approximately $50,000.00 left in his retirement account. Although Martin spent a considerable sum of his retirement account, nothing shows that those expenditures did not benefit the community estate.[2] Without further proof of how much was in Martin's retirement account at the time of the marriage, we decline to accept Angela's characterization that "Martin stole the vast majority of that account."

Angela introduced no evidence of how much money was in her retirement account or her income earnings versus Martin's income earnings during the marriage. As a result, Angela argues that there was

> no evidence of the parties' income or earnings capacity disparity. There was no
> evidence of the parties' different capacities or abilities. There was no evidence of

---

[2]"Courts may also consider whether one spouse contributed less than an equal share to the family's finances or the development of the community estate." *Williams*, 2018 WL 6424245, at *5. Here, nothing showed that one party contributed more or less than the other to the community estate or its obligations.

the parties' relative needs or financial condition. There was no evidence as to fault in ending the marriage or benefits had the marriage continued. There was no evidence of the relative physical conditions, relative future business prospects, disparity in age, separate estates, or relative education of the parties.

Although Angela had ample opportunity to present sufficient evidence at trial, she now complains that her failure to do so equates to an abuse of discretion in the trial court's decision to award each party its own retirement account. We disagree.

Faced with a lack of evidence at trial, the court awarded each party its own retirement account after hearing that Angela had worked during the entire marriage.[3] In making that decision, the trial court factored in the no-fault nature of this divorce and the nature of Martin's expenditures. We find that Angela cannot now use her failure to present evidence at trial to argue that the trial court's award to each party of its own retirement account was unjust.

### 2.    The CPA Fees

Second, Angela argues that the trial court should have ordered Martin to pay all of Selph's fees. However, Martin did not incur the debt, which solely benefitted Angela in assisting her to receive innocent spouse status. The record showed that Angela hired Selph and that Selph billed Angela for his services. "Marriage itself does not create joint and several liability." Tom Featherston & Allison Dickson, *Marital Property Liabilities: Dispelling the Myth of Community Debt*, 73 Tex. Bar J. 16, 19 (2010); *see Tedder v. Gardner Aldrich, LLP*, 421 S.W.3d 651, 655 (Tex. 2013). Instead, a "spouse's liability for debts incurred by or for the other is determined by

---

[3]"Income earned during marriage is community property." *Matter of Marriage of Tyeskie*, 558 S.W.3d 719, 723 (Tex. App.—Texarkana 2018, pet. denied) (quoting *In re Marriage of Born*, No. 06-08-00066-CV, 2009 WL 1010876, at *3 (Tex. App.—Texarkana Apr. 16, 2009, no pet.) (mem. op.)).

statute." *Id.* (citing TEX. FAM. CODE ANN. §§ 2.501, 3.201). When read together, Sections 2.501 and 3.201 establish that "one spouse is not liable for the other's debt unless the other incurred it as the one's agent or the one failed to support the other and the debt is for necessaries." *Id.* Also, the general rule is that "community property is not subject to a liability that arises from an act of a spouse." TEX. FAM. CODE ANN. § 3.201(b). Therefore, we cannot conclude that the trial court abused its discretion in failing to require Martin to pay all of Selph's fees.

### 3.    The Ford Focus

Third, Angela argues that she owned the Ford Focus. While she acknowledged that "[t]here is limited evidence about this automobile," she argues that the trial court should have awarded the car to her. We disagree.

Contrary to Angela's bare assertion in her brief, there was no evidence establishing that the Ford Focus belonged to Angela or that it was her sole-management community property. In fact, there was no evidence as to when and how the vehicle was purchased, whether it was worth more or less than the Dodge truck, or who drove it more. Instead, it was presumed that it was community property purchased for community use, and when asked if she had a Ford, Angela replied, "Mine is a Dodge," implying that Martin may have used the Ford as his primary vehicle. Based on a lack of evidence regarding the vehicles, the trial court found that it was just and right to award each party one vehicle and to allow Angela to keep her Dodge. Given that there is no evidence showing that Angela did not receive the more expensive car, she cannot now complain of this division.

11

### 4. The Tax Liability

Next, Angela complains that the trial court should have held Martin liable for any tax liability incurred during every year of the marriage instead of only for years 2015 and 2016. However, the evidence showed that Angela had already been absolved for the only tax liability actually incurred during the marriage and was going to file separately in 2017. Though Angela argues she is potentially liable for years 2010, 2011, and 2013, nothing shows that the IRS has made any assessment of delinquency for those years.[4] Therefore, nothing shows that the trial court abused its discretion in failing to hold Martin liable for nonassessed, allegedly possible tax delinquencies during the marriage.

### 5. Summation

Again, while we addressed each of Angela's arguments, we reject her invitation to conduct a piecemeal review of the trial court's property division. It is Angela's burden to show that the division was so unjust that the trial court abused its discretion. Angela presented no evidence of the worth of property awarded to each spouse. Also, because there is no evidence to support it, she does not argue that the property awarded to her is worth less than the property awarded to Martin. Given that this was a no-fault divorce, we find that Angela failed to meet her burden to show abuse of discretion in the property division.

---

[4] "While a tax is technically not a debt and a court has no power to relieve either party of personal liability to the taxing authority, in dividing property between spouses a court may take the tax liability into consideration and may even require one party to assume the other's liability or require reimbursement for taxes paid." *Able v. Able*, 725 S.W.2d 778, 780 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.) (citing *Cole v. Cole*, 532 S.W.2d 102, 104–05 (Tex. Civ. App.—Dallas 1975, no writ)).

## IV. Conclusion

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:      December 9, 2019
Date Decided:        January 3, 2020