WITHERSPOON et al. v. DAVISS, District Judge.

(Court of Civil Appeals of Texas. Austin. Feb. 4, 1914.)

1. COURTS (§ 247*)—JURISDICTION—TRANSFERRED CASE.

Const. art. 5, § 6, declares that the Courts of Civil Appeals "shall have appellate jurisdiction coextensive with the limits of their respective districts, and * * * shall have such other jurisdiction * * * as may be prescribed by law." Rev. Civ. St. 1911, art. 1587, provides that the Court of Civil Appeals to which a case shall be transferred from another such court because of the pressure of business upon the latter's docket "shall have jurisdiction of all such cases transferred without regard to the district in which the cases were originally tried and returnable on appeal." Held, that the Court of Civil Appeals for the Third District had the same jurisdiction over a case arising in Navarro county in the Fifth District as it would have had had the case been originally appealed from a county within the Third District.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 749, 751–754, 757, 759, 760, 762–764; Dec. Dig. § 247.*]

2. MANDAMUS (§ 58*) — GROUNDS — ENFORCEMENT OF MANDATE.

Under Rev. Civ. St. 1911, art. 1592, which declares that the Court of Civil Appeals and the judges thereof "shall have power to issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts," where a case has been reversed, with instructions to enter a particular judgment, and the trial court enters a judgment materially different from the one directed, the remedy of the

dissatisfied litigant is by mandamus to compel entry of the proper judgment.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 121; Dec. Dig. § 58.*]

**3. APPEAL AND ERROR (§ 1198*)—MANDATE—CONSTRUCTION—WHAT CONSTITUTES DISOBEDIENCE.**

Where a mandate of the Court of Civil Appeals directing the entry of a perpetual injunction was directed to the district court of a certain county, and not to the particular judge thereof, such judge's refusal in chambers to grant the application for such injunction was not disobedience of the mandate.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4668; Dec. Dig. § 1198.*]

**4. MANDAMUS (§ 164*)—ANSWER—THREATS TO DISOBEY MANDATE.**

Allegations, in an application to the Court of Civil Appeals for a peremptory mandamus against a district judge, that such judge has threatened to disregard a mandate will not justify the Court of Civil Appeals in resorting to summary measures, especially where the judge in his answer denies making such threats.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 344–360; Dec. Dig. § 164.*]

**5. MANDAMUS (§ 164*)—ANSWER—EFFECT.**

On an application to the Court of Civil Appeals for a peremptory mandamus against a district judge to compel him to obey a mandate, the fact that the judge in his answer does not state what course he will pursue when the matter of enforcing the mandate is properly brought before him will not be regarded as evidence against him; it being commendable for a judge to refrain from stating how he intends to rule in regard to any particular matter which may in the future come before him as a judge.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 344–360; Dec. Dig. § 164.*]

**6. MANDAMUS (§ 172*).**

Where a trial judge refuses to obey a mandate of the Court of Civil Appeals directing the rendition of a particular judgment, such court will, on proper showing, adopt such means as may be proper to enforce its mandate, even though an application for a peremptory mandamus against the judge to compel obedience of the mandate has been previously denied, because at the time of the denial there had been no disobedience by the judge.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 381–385; Dec. Dig. § 172.*]

Original application for peremptory writ of mandamus by C. L. Witherspoon and others against H. B. Daviss, District Judge. Mandamus refused.

W. J. McKie and J. S. Callicutt, both of Corsicana, for relators. Richard Mays and R. S. Neblett, both of Corsicana, for respondent.

KEY, C. J. C. L. Witherspoon and Lucy P. Hines, joined by her husband, Frank Hines, have made application to this court for a peremptory writ of mandamus against Hon. H. B. Daviss, judge of the Thirteenth judicial district, to compel him to obey the mandate of this court, issued on the 8th day of January, 1914, in a case decided at the last term of this court, in which case this court determined and settled the rights of the litigants, and by its opinion, judgment, and mandate remanded the case to the district court of Navarro county, with instructions to that court to render a certain specified judgment. The case originated in the district court of Navarro county, and involved the right of possession to a certain tract of land. Frank Hines and his wife were owners of the land, and on the 30th day of September, 1910, they executed a mineral lease contract to W. H. Staley; and thereafter, on the 3d day of February, 1911, Frank Hines and his wife executed another lease contract, covering the same land, to C. L. Witherspoon. The suit referred to was a contest between Witherspoon and Hines and his wife on one side, and Staley and T. N. Barnsdall, who was claiming under Staley, on the other side, as to the validity and legal effect of the lease contract between Frank Hines and Staley. When the suit was first brought, a temporary injunction was issued against Staley, which was afterwards dissolved, and from the order of the judge dissolving that injunction, Witherspoon prosecuted an appeal to the Court of Civil Appeals for the Fifth District, which court approved and affirmed the action of the district judge in dissolving the temporary injunction, but did not direct or instruct the trial court what character of judgment to render when the main case was tried. Witherspoon v. Staley, 138 S. W. 1191. Thereafter the main case was tried by the district court of Navarro county, and judgment rendered for Staley and his codefendant Barnsdall, from which judgment an appeal was prosecuted to the Court of Civil Appeals for the Fifth District; and, by order of the Supreme Court, the case made by that appeal was transferred to this court.

Afterwards, and in due order, the case was heard and decided by this court, and judgment rendered in favor of the appellants, with instructions to the district court of Navarro county "to render judgment for appellants canceling, annulling and setting aside said lease from Hines to Staley, and perpetually enjoining and restraining said appellees, their agents, employés, and contractors from going on the said Hines' property for the purpose of developing oil or minerals, or any other purpose whatsoever. And, further, that they be likewise enjoined from interfering in any way with appellants in their effort to develop said property." Witherspoon v. Staley, 156 S. W. 557.

Being dissatisfied with that judgment, the appellees Staley and Barnsdall presented a motion in this court for a rehearing, which was overruled; whereupon they applied to the Supreme Court for a writ of error, which application was refused by that court. After this court was properly apprised of the action of the Supreme Court in refusing to grant a writ of error, this court issued its mandate to the district court of Navarro county, commanding that court to observe, obey, and execute the judgment rendered by this court.

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

The mandate was filed in the district court of Navarro county on the 12th day of January, 1914. Whereupon C. L. Witherspoon and Frank Hines and his wife made application to Judge Daviss in chambers for a writ of injunction against W. H. Staley and T. N. Barnsdall, requiring them to cease taking oil from the Hines farm, and not to interfere with or impede the right of Witherspoon and the Hineses to enter and take possession of said property. That application was heard in chambers, and was refused by Judge Daviss, and thereupon the Hineses and Witherspoon applied to this court for relief. The matter was set down for hearing, and was submitted upon the sworn application referred to, the sworn answer of Judge Daviss, the respondent, and written and oral argument by counsel for both sides.

[1] Without dwelling upon minor matters, we will now consider the principal questions discussed at the bar. The respondent's answer raises the question, which was argued at length by counsel, that, inasmuch as Navarro county is not within the limits of this the Third supreme judicial district, but is within the limits of the Fifth supreme judicial district, therefore this court is without power and has no further jurisdiction to issue any writ or do anything else for the purpose of enforcing the judgment of this court, or for any other purpose. By section 6 of article 5 of the Constitution of this state it is declared that the Courts of Civil Appeals "shall have appellate jurisdiction coextensive with the limits of their respective districts," and that they shall also "have such other jurisdiction, original and appellate, as may be prescribed by law."

This latter provision places it within the power of the Legislature to enlarge or diminish the jurisdiction of the Courts of Civil Appeals by changing either the character of cases that may be heard and determined by those courts, the method of bringing cases before them or their territorial limits. In 1895 the Legislature, acting in pursuance of that provision of the Constitution, and by the authority thereby conferred, enacted a statute for the purpose of equalizing the dockets of the different Courts of Civil Appeals, by which statute the Supreme Court was authorized to direct the transfer of cases from such Courts of Civil Appeals as might have a greater amount of business upon their dockets to those having a less amount; and we quote as follows from that statute, which is article 1587 of the Revised Statutes of 1911: "And said Courts of Civil Appeals, to which such cases shall be transferred, shall have jurisdiction of all such cases transferred without regard to the districts in which cases were originally tried and returnable on appeal."

The constitutionality of that statute was challenged in Bond v. Carter, 96 Tex. 359, 72 S. W. 1059, but the Supreme Court held that the clause of the Constitution last referred to was ample authority for the enactment of the statute. By the very terms of that statute, when a case has been transferred from one Court of Civil Appeals to another, the latter acquires jurisdiction, without regard to the county or district in which the case originated and was tried. That phrase must have been put in the statute for the purpose of removing all possible doubt and rendering it absolutely certain that it was the intention of the Legislature, when a case had been transferred from one Court of Civil Appeals to another, that the latter should have as much jurisdiction over that case as over those which originated and were tried within the territorial limits of that court. So this court has no shadow of doubt upon the proposition that, when the case of Witherspoon v. Staley was placed upon its docket, it acquired jurisdiction thereof, to the same extent as it would have if the case had been originally tried by and appealed from the district court of Travis county, or any other county within the limits of the Third supreme judicial district. It does not seem to us that plausible room for difference of opinion can exist upon that subject. It cannot be denied that the Constitution authorizes the Legislature to confer such jurisdiction, and the Legislature has declared that, when a case has been transferred, as authorized, by the statute, the court to which it is transferred has jurisdiction, without regard to where the case was originally tried. If this language does not mean that, in determining the extent of the jurisdiction conferred, the place, the district, or the county in which the case was originally tried is not to be considered, then we confess our inability to understand the English language. This is all that we deem it necessary to say upon the subject of the jurisdiction of this court, as affected by the fact that the suit originated and was tried in another district and the appeal transferred to this court. In fact, we think that the statute above quoted answers the objection referred to, and it is difficult to make it any plainer than the Legislature has written it in that statute.

[2] Article 1592 of the Revised Statutes of 1911, declares that the Courts of Civil Appeals, and the judges thereof, "shall have power to issue writs of mandamus and all other writs necessary to enforce the jurisdiction of said courts." In the leading case of Wells v. Littlefield, 62 Tex. 28, our Supreme Court held that mandamus was the proper remedy to compel a subordinate court, from which a case had been appealed, to render such judgment as the appellate court had directed that court to render. The Supreme Court had reversed that case, with instructions to the district court to render a particular judgment, which that court first did, but afterwards set the judgment aside, and was about to proceed to retry the entire case; whereupon Wells applied to the Supreme Court for a mandamus to compel the judge

to obey the mandate of the Supreme Court, and render judgment for him, as directed by its mandate. After full consideration, and in pursuance of a luminous and instructive opinion by Chief Justice Willie, the Supreme Court issued a peremptory mandamus, requiring the judge of the trial court to obey its former mandate. In that case, it was contended by learned counsel that the Supreme Court had no power to deprive the district court and the judge thereof, of the judicial discretion vested in the latter court by law, and compel the judge of that court to render any particular judgment. We quote as follows from the opinion in that case: "Under our Constitution the Supreme Court has appellate jurisdiction only, and issues the writ of mandamus for the purpose solely of enforcing that jurisdiction. Const. art. 5, § 3. So soon as the jurisdiction attaches under an appeal or writ of error, this court has full control of the cause, and can make such orders concerning it as may be necessary to preserve the rights of the parties and enforce its mandates. This jurisdiction continues until the case, as made by the appeal or writ of error, is fully determined by this court, and its judgment is completely executed by the court below. If the judgment below is affirmed, or reversed and rendered or reformed, this court can see that the party in whose favor its decision has been given has the benefit of all proceedings below necessary to enforce its judgment. If remanded for a new trial, it retains control until the new trial is allowed in accordance with its mandate. If reversed and sent down to have some special judgment rendered by the court below, jurisdiction remains till that particular judgment is entered up, and the mandate of the court obeyed. For the purpose of enforcing all such orders coming within the appellate jurisdiction of the court, it may resort to the writ of mandamus, or any other appropriate writ known to our system of jurisprudence. * * * We think this court had authority to remand the cause to be disposed of as required in the opinion of the court. But it is further contended that, in giving its directions to the lower court as to the further proceedings to be had in the suit, this court allowed the former a judicial discretion which could not be controlled by a mandamus. To ascertain what judgment was to be rendered, we must look as well to the opinion of the court accompanying the mandate as to the mandate itself. West v. Brashear, 14 Pet. 51 [10 L. Ed. 350]. The opinion directs the court to render judgment in favor of Wells. That part of it is peremptory, and certainly leaves no discretion with the district court as to the party in whose favor the judgment must be entered up. If upon a new trial it should appear, by newly discovered evidence or otherwise, that such a case had been made out as entitled Littlefield to recover, and the court should accordingly give judgment against Wells, the order of the court would be disobeyed. The very terms of the opinion preclude all possibility of a new trial upon any issues already made, or facts transpiring before the time of the former trial."

If we are correct in holding that this court has as much jurisdiction over the case of Witherspoon v. Staley as it would have possessed had that case originated within the territorial limits of the Third supreme judicial district, then the foregoing excerpt from the opinion of the Supreme Court settles the question that this court has not lost, but still possesses, jurisdiction and power to make such orders concerning that case as may be necessary to preserve the rights of the parties and enforce its mandate. Furthermore, although the case was disposed of finally by this court at a former term, still it is by no means clear that this court is without power to withdraw and cancel the mandate sent to the trial court, and enter upon its minutes the judgment which it directed the court below to enter, and issue the necessary process for the enforcement of that judgment. In other words, we are strongly inclined to the view that the decision rendered by this court, as disclosed by its written opinion and the entries made upon its minutes, was equivalent to, and, in effect, constituted, a judgment rendered by this court in favor of Witherspoon and the other appellants. Black on Judgments, § 3. However, we do not mean to intimate what course will be pursued by this court in the event the trial court refuses to obey its mandate; and we also deem it proper to say that it has long been the practice of this court, when its decision settles the rights of the parties and requires the issuance of an injunction or some other like action, to reverse with instructions to the trial court. We have proceeded upon the assumption that the trial courts have more time, and it would perhaps be more convenient for such process to be issued from those courts, and that is the sole reason why that course was pursued in this instance; but what has since occurred in this case furnishes grounds for doubting the wisdom of the course pursued, and in the future that practice may not be adhered to. In pursuing the course referred to, it has never been the purpose of this court in any wise to disparage trial courts or the judges thereof. Before an appeal has been taken, those courts very properly have the power to decide any case as they believe it should be decided; and even after appeal, if the case has been reversed, without instructions to render a specific judgment, the trial court can exercise its discretion, and, if it sees proper, decline to follow the views announced by the appellate court. But, when a case is reversed with specific instructions, both discretion and responsibility are withdrawn from the trial court. When a case has reached that stage, the rights of the

parties have already been adjudicated and settled by the appellate court; and, while the latter court may require the judgment to be entered on the minutes of the trial court, it is, in substance and effect, the judgment of the appellate court. In other words, the course referred to is merely a means adopted by the appellate courts for the enforcement of their own decisions settling the rights of the parties. When a case has been reversed, with instructions to enter a particular judgment, not only can the trial court be compelled to enter and enforce the judgment, but its enforcement cannot be obstructed by appeal or otherwise. No right of appeal exists from the means adopted for the enforcement of a judgment or decision of an appellate court. In such a case, if the trial court should enter a judgment materially different from the one directed by the appellate court, the remedy of the dissatisfied litigant would be mandamus to compel the trial court to enter the proper judgment.

[3] However, although we are satisfied that this court has jurisdiction and power to compel obedience to its mandate, we are of opinion that the relators are not entitled to the relief sought. The mandate of this court which pursues its judgment is directed to the district court of Navarro county, and not to Judge Daviss, when he is not acting as judge of that court. In other words, the judgment of this court and the mandate issued in pursuance thereof do not require or direct any action by Judge Daviss while the district court of Navarro county is not in session, and therefore his refusal in chambers to grant relators' application for an injunction does not constitute any disobedience of the mandate of this court. And this is true, although he may have acted erroneously in ruling upon the application referred to, as to which we express no opinion.

[4] But it is stated in the application presented to this court that, by setting the case of Witherspoon v. Staley for hearing at a particular day of the next term of the district court of Navarro county, and by certain statements to the effect that he did not consider that he was bound by the decision of this court, and did not intend to comply with its mandate, the respondent has manifested such a spirit of disobedience as entitles the relators to some character of remedy. No authority has been cited, and we know of none, which would justify holding that a mere threat by Judge Daviss to disregard the decision and mandate of this court would constitute such disobedience as would justify this court in resorting to summary measures. But, as a matter of fact, in his answer Judge Daviss denies that he has ever made the statements attributed to him, and that of itself is sufficient reason for this court's declining to base any action upon the alleged statements.

[5] It was also urged in argument that relators have stated in their application that, unless further action is taken by this court, when the district court of Navarro county convenes and the case in question is reached, Judge Daviss will disregard the mandate of this court, and will proceed to retry the case referred to, and that in his answer he has not denied that allegation, nor stated what course he would pursue in that regard. We do not think that the circumstances referred to would justify this court in issuing any other writ at this time. Generally speaking, it is regarded as commendable and not as reprehensible for a judge, or any one seeking a judgeship, to refrain from stating how he intends to rule in regard to any particular matter which might in the future come before him as a judge; and therefore we are not disposed to consider respondent's silence in regard to the matter referred to as evidence against him.

[6] Finally, in the event this court grants no other relief, we were requested by counsel for relators to hold this proceeding in such an attitude that, if respondent, when he reaches this case upon his docket, should decline to obey the mandate of this court and enter the judgment required thereby, relators may supplement the present application, and then ask for the relief which is now denied; and we see no objection to pursuing that course. In fact, we see no reason why relators would not have that right without anything being said upon the subject; but we deem it proper to say that, while the record here made does not furnish sufficient reason to suppose that respondent will defy the mandate of this court, and refuse to execute its judgment as directed by that mandate, still, if he does so, and the proper supplemental showing is made, it will then become the duty of this court to award relators' relief by adopting such means as may be deemed proper to accomplish that result; and that duty will then be performed.

Mandamus refused.