NO. 07-07-0282-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS
 
AT AMARILLO

PANEL A

JULY 30, 2009
                                       ______________________________

DANIEL SIMMONS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE 227TH DISTRICT COURT OF BEXAR COUNTY;

NO. 2006CR0572; HONORABLE PHILIP A. KAZEN, JR., JUDGE
_______________________________


Before CAMPBELL and HANCOCK and PIRTLE, JJ.
MEMORANDUM OPINION
          Appellant Daniel Simmons appeals from his conviction for burglary of a habitation
and the resulting sentence of twenty-five years of confinement in the Institutional Division
of the Texas Department of Criminal Justice. Through six points of error, appellant
contends the evidence was legally and factually insufficient to support his conviction and
asserts this Court lacks jurisdiction to hear his appeal. We affirm.
 
 
Background
          Appellant was indicted for burglary of a habitation with intent to commit an assault.


 
The indictment also included two enhancement paragraphs setting forth appellant’s two
prior felony convictions.


 Following appellant’s plea of not guilty, the case was tried to a
jury.
          The home appellant entered was that of James “Elmo” Wilson. Paul Gentry gave
Wilson a ride to a lounge where they shot pool. Gentry took Wilson home along with two
other individuals, Joyce Walls and appellant. When they arrived, Wilson got out of the car
and went to his truck. Appellant got out of the car and hit Wilson, causing him to fall to the
ground. 
          Gentry got out of the car and helped Wilson to his apartment. Gentry told Wilson
to close his door and Wilson told him he would close the screen door because it was hot. 
In the meantime, Walls helped appellant to his apartment in the same complex and
returned to the car. As Gentry pulled away, he saw appellant coming across the parking
lot so, a few minutes later, he called Wilson to check on him. Wilson told Gentry that
appellant knocked him down again. Gentry and Walls returned to Wilson’s apartment and
saw appellant walking away from the apartment, leaning on a wall. By the time they
walked past him, appellant had fallen down. Later testimony indicated appellant had been
shot by Wilson.


 
          Wilson testified he was a sixty-eight-year-old retiree, disabled from a stroke that left
him with limited mobility in his left arm and leg. He said he knew appellant from his former
workplace and considered him a friend. Wilson testified he thought he locked the door to
his apartment after Gentry left him. He went to his bedroom to prepare to go to sleep and
heard his front door open. He grabbed his pistol and placed it in his back pocket. He went
into the living room as appellant pulled open the door. Appellant “locked [Wilson] up
against the couch,” hit him, and the two wrestled against the door frame. Wilson grabbed
the gun and pulled the trigger to protect himself. The gun went off. Wilson testified he did
not know a bullet hit appellant until he told Wilson he was shot. 
          Appellant recalled Wilson to clarify information he provided in a taped statement to
a private investigator. He highlighted the statement by Wilson that after he shot appellant,
the two wrestled for several minutes. Appellant also called Joyce Walls, the other
passenger in Gentry’s car. She testified appellant and Wilson had a verbal disagreement
that escalated quickly. She testified she saw Wilson swing his cane toward appellant when
the men got out of the car. Appellant also highlighted the absence of evidence presented
at trial to show forced entry into Wilson’s apartment.
 
          Following presentation of the evidence, the jury found appellant guilty of the offense
as charged in the indictment. Punishment was assessed against appellant at twenty-five
years confinement. This appeal followed.
Analysis
          Appellant presents six points of error for our review. In his first two points, appellant
contends the evidence was legally and factually insufficient to support his conviction. In
appellant’s remaining four points of error, he argues that this Court lacks jurisdiction to
consider his appeal. We begin with appellant’s challenge to our jurisdiction.
Jurisdiction
          Appellant was convicted by the 227th Judicial District Court of Bexar County. He
timely filed notice of appeal to the Fourth Court of Appeals, whose district includes Bexar
County. See Tex. Gov’t Code Ann. § 22.201(e) (Vernon 2004 & Supp. 2007). The appeal
later was transferred to this court by the Supreme Court of Texas under the authority given
it in chapter 73 of the Government Code.


 Tex. Gov’t Code Ann. § 73.001, et seq. (Vernon
2005).


 Appellant’s third, fourth, fifth and sixth issues challenge the validity of the transfer. 
He contends the transfer was void because it violated provisions of both the United States
and Texas Constitutions, and did not give this court jurisdiction over his appeal. We will
overrule the issues.
          The record reflects that appellant was notified of the transfer of his appeal to this
court. Our Supreme Court has set out the proper procedure for requesting transfer of an
appeal from one court of appeals to another. Miles v. Ford Motor Co., 914 S.W.2d 135,
137 n.2 (Tex. 1995). We agree with our sister court in El Paso that complaints about the
transfer of cases by the Supreme Court are properly raised by the initiation of the
procedure outlined in Miles. See Arocha v. State, No. 08-07-00108-CR, 2009 WL 1883733
(Tex.App.–El Paso June 30, 2009, no pet. h.) (mem. op., not designated for publication)
(addressing challenge to its jurisdiction over transferred case). We see no reason why that
procedure was unavailable to appellant to present his objections to the Supreme Court’s
order transferring his appeal, and thus conclude his third, fourth, fifth and sixth points of
error have not been preserved for our review. Tex. R. App. P. 33.1.



          Even if we are mistaken about the necessity for appellant to pursue the procedure
outlined in Miles, however, we could not sustain his challenge to our jurisdiction. Through
his fourth, fifth and sixth points of error, appellant argues the Supreme Court’s order
transferring his appeal violated the Texas Constitution. His fourth point argues chapter 73
of the Government Code conflicts with provisions of Article 5 of our state’s constitution; his
fifth point argues the transfer violated the Due Course of Law provision of Article 1, Section
19; and his sixth point contends the statutory provisions for transfer of cases among courts
of appeals are void exercises of legislative authority over the judiciary contrary to the
separation of powers set out in Article 2, Section 1. 
          Article 5, Section 6 of the Texas Constitution provides for courts of appeals districts,
and gives the courts of appeals appellate jurisdiction “co-extensive with the limits of their
respective districts, which shall extend to all cases of which the District Courts or County
Courts have original or appellate jurisdiction, under such restrictions and regulations as
may be prescribed by law.” The same section later provides that the courts of appeals
“shall have such other jurisdiction, original and appellate, as may be prescribed by law.”
Tex. Const. art. V, § 6. In Bond v. Carter, 72 S.W. 1059 (1903), the Texas Supreme Court
cited the latter provision in rejecting a challenge to the constitutionality of an order
transferring an appeal from one court of civil appeals to another under an 1895 statute. 
See also Guzman v. State, No. 03-02-00040-CR, 2002 WL 1988376 (Tex.App.–Austin
August 30, 2002, no pet.) (mem. op., not designated for publication) (“The Texas
Constitution and statutes provide for the transfer of appeals from one court of appeals to
another”); Witherspoon v. Davis, 163 S.W. 700, 702 (Tex.Civ.App.–Austin 1914, orig.
proceeding) (citing Bond, rejecting challenge to court’s power to enforce judgment in
transferred case). Bond provides a sufficient answer to appellant’s contentions the transfer
of his appeal to this court violated the Texas Constitution. 
 
          By his third issue, appellant contends the provisions of Texas law permitting the
transfer of appeals from one intermediate appellate court to another violate the Equal
Protection Clause of the Fourteenth Amendment because the transfer interferes with the
right of voters to elect the judiciary.


 Observing that voters in the Fourth District elect
justices to the Fourth Court of Appeals and transfer of his appeal to the Seventh Court of
Appeals means it will be decided instead by justices elected by voters living in the Seventh
District, appellant reasons that transfer of appeals of cases arising in the Fourth District
deprives voters of the right to elect the appellate judges who will decide cases arising in
their district. Appellant does not demonstrate, however, that he has standing to litigate the
Equal Protection rights of Fourth District voters. See, e.g., Gray v. Sanders, 372 U.S. 368,
375, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963) (litigant qualified to vote in elections had standing
to challenge voting processes). Moreover, he presents no persuasive argument that the
transfer of an appeal from one Texas court of appeals to another effectively impinges on
those rights.
          We overrule appellant’s third, fourth, fifth and sixth points of error.
 
 
Sufficiency of the Evidence
          Appellant’s first two points of error challenge the sufficiency of the evidence to
support his conviction. In reviewing issues of legal sufficiency, an appellate court views the
evidence in the light most favorable to the verdict to determine whether, based on that
evidence and reasonable inferences drawn from the evidence, a rational jury could have
found each element of the offense beyond a reasonable doubt. Swearingen v. State, 101
S.W.3d 89, 95 (Tex.Crim.App. 2003); Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App.
2001), citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). 
If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt
of the defendant’s guilt, due process requires that we reverse and order a judgment of
acquittal. Swearingen, 101 S.W.3d at 95, citing Narvaiz v. State, 840 S.W.2d 415, 423
(Tex.Crim.App. 1992), cert. denied, 507 U.S. 975,113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). 
Circumstantial evidence is as probative as direct evidence in establishing guilt, and
circumstantial evidence alone can be sufficient to do so. Hooper v. State, 214 S.W.3d 9
(Tex.Crim.App. 2007), citing Guevara v. State, 152 S.W.3d 45, 49 (Tex.Crim.App. 2004).
           A legal sufficiency analysis requires an appellate court to consider all the evidence
admitted that will sustain the conviction. Hernandez v. State, 190 S.W.3d 856, 863-64
(Tex.Crim.App. 2006). As fact finder, the jury is the exclusive judge of the credibility of 
witnesses and the weight to be afforded their testimony. Id. A reviewing court must give
deference to “the responsibility of the trier of fact to fairly resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” 
Hooper, 214 S.W.3d at 13, quoting Jackson, 443 U.S. at 318-19.
          A factual sufficiency review of the evidence is “barely distinguishable” from the legal
sufficiency review under Jackson v. Virginia. Marshall v. State, 210 S.W.3d 618, 625
(Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence
supporting guilt, though legally sufficient, is so weak that the jury’s verdict seems clearly
wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury’s
verdict is against the great weight and preponderance of the evidence. Id.; Watson v.
State, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); Johnson v. State, 23 S.W.3d 1, 11
(Tex.Crim.App. 2000). In a factual sufficiency review, we again consider all the evidence,
but now in a neutral light. Marshall, 210 S.W.3d at 625; Watson, 204 S.W.3d at 414. 
          A person commits the offense of burglary of a habitation when that person, (1)
without the effective consent of the owner, (2) enters a habitation, (3) with the intent to
commit a felony or theft. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003). Appellant’s
argument focuses on the evidence of the first element of the offense.


 Specifically,
appellant argues the State failed to prove beyond a reasonable doubt he entered Wilson’s
apartment without Wilson’s effective consent. We disagree. 
          Consent means assent in fact, whether express or apparent. Tex. Penal Code Ann.
§ 1.07(a)(11) (Vernon 2003). Wilson testified he thought he locked his front screen door
when he returned home from playing pool. When he heard his front door squeak, he
grabbed his pistol and placed it in his back pocket. Appellant pulled open the door as
Wilson entered the living room. Appellant “locked [Wilson] up against the couch,” hit him,



and the two wrestled against the door frame.


 He also testified appellant did not have his
permission to enter his apartment, to walk into his living room, or to assault him. 
          The testimony of Wilson is sufficient to establish the absence of effective consent. 
See Ellett v. State, 607 S.W.2d 545, 550 (Tex.Crim.App. 1980); Lagunas v. State, 187
S.W.3d 503, 521 (Tex.App.–Austin 2005, pet. ref’d) (court found legally sufficient evidence,
based on testimony at trial, to support the inference that appellant did not have permission
or effective consent to enter the house). See also Hardy v. State, No. 05-06-00549-CR,
2007 WL 1585741, *2 (Tex.App.–Dallas June 4, 2007, pet. ref’d) (mem. op., not
designated for publication) (finding evidence factually sufficient to support burglary
conviction when the owner of the house testified that she did not invite appellant into her
house on the day of the incident); Zarate v. State, No. 01-03-00183-CR, 2004 WL
1119963, *4 (Tex.App.–Houston [1st Dist.] May 20, 2004, no pet.) (mem. op., not
designated for publication) (reaching same conclusion).
          Further, even if the door were open or unlocked at the time of appellant’s entry and
did not show signs of forced entry or fingerprints, such circumstances do not establish
appellant had the effective consent of Wilson to enter his apartment. Ellet, 607 S.W.2d at
550. The Penal Code does not require forced entry to support the charge of burglary. Id.
at 549. Indeed, even one who enters through an open door could do so without effective
consent. Id. See also Blackmon v. State, No. 07-01-0495-CR, 2002 WL 31627094, * 3
(Tex.App.–Amarillo Nov. 21, 2002, no pet.) (mem. op., not designated for publication)
(finding the testimony of the owner of a residence that she did not give consent to the
defendant to enter the premises sufficient to establish lack of consent and noting that even
if the door is left open, it does not mean the perpetrator had permission to enter), citing
Marinez v. State, 636 S.W.2d 732, 734 (Tex.App.–Corpus Christi 1982, no pet.) (finding
ample evidence of a lack of consent in the testimony of the owner of the house that she
did not give appellant permission to enter her home).
          Likewise, Wilson’s testimony that appellant sometimes brought food to him and that
the two of them often sat by his front porch and drank coffee together does not diminish
Wilson’s trial testimony that on the occasion in question appellant did not have his consent
to enter his apartment. See Rangel v. State, 179 S.W.3d 64, 69 (Tex.App.–San Antonio
2005, pet. ref’d) (finding evidence legally sufficient and concluding that the jury could have
reasonably believed the statement that there “have been times when [appellant] has been
allowed to stay at my house, but he didn’t have permission to come in the house today”
despite earlier testimony that appellant “always had permission” to enter her home).
          Viewing the evidence in the proper light, we find the evidence to be both legally and
factually sufficient to support appellant’s conviction. We overrule appellant’s first two
points of error and affirm the judgment of the trial court. 
 
                                                                           James T. Campbell

                                                                                     Justice









Do not publish.