NO. 07-07-0282-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JULY 30, 2009
_____

DANIEL SIMMONS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 227TH DISTRICT COURT OF BEXAR COUNTY;

NO. 2006CR0572; HONORABLE PHILIP A. KAZEN, JR., JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant Daniel Simmons appeals from his conviction for burglary of a habitation and the resulting sentence of twenty-five years of confinement in the Institutional Division of the Texas Department of Criminal Justice. Through six points of error, appellant contends the evidence was legally and factually insufficient to support his conviction and asserts this Court lacks jurisdiction to hear his appeal. We affirm.

## Background

Appellant was indicted for burglary of a habitation with intent to commit an assault.[1] The indictment also included two enhancement paragraphs setting forth appellant's two prior felony convictions.[2] Following appellant's plea of not guilty, the case was tried to a jury.

The home appellant entered was that of James "Elmo" Wilson. Paul Gentry gave Wilson a ride to a lounge where they shot pool. Gentry took Wilson home along with two other individuals, Joyce Walls and appellant. When they arrived, Wilson got out of the car and went to his truck. Appellant got out of the car and hit Wilson, causing him to fall to the ground.

Gentry got out of the car and helped Wilson to his apartment. Gentry told Wilson to close his door and Wilson told him he would close the screen door because it was hot. In the meantime, Walls helped appellant to his apartment in the same complex and returned to the car. As Gentry pulled away, he saw appellant coming across the parking lot so, a few minutes later, he called Wilson to check on him. Wilson told Gentry that appellant knocked him down again. Gentry and Walls returned to Wilson's apartment and saw appellant walking away from the apartment, leaning on a wall. By the time they

---

[1] *See* Tex. Penal Code Ann. § 30.02 (Vernon 2003). This offense was enhanced pursuant to Tex. Penal Code Ann. § 12.42 (Vernon 2007).

[2] During the punishment phase of trial, appellant pled "true" to both offenses set forth in the enhancement provisions of the indictment.

walked past him, appellant had fallen down.  Later testimony indicated appellant had been

shot by Wilson.[3]

Wilson testified he was a sixty-eight-year-old retiree, disabled from a stroke that left

him with limited mobility in his left arm and leg.  He said he knew appellant from his former

workplace and considered him a friend.  Wilson testified he thought he locked the door to

his apartment after Gentry left him.   He went to his bedroom to prepare to go to sleep and

heard his front door open. He grabbed his pistol and placed it in his back pocket.  He went

into the living room as appellant pulled open the door.  Appellant "locked [Wilson] up

against the couch," hit him, and the two wrestled against the door frame.  Wilson grabbed

the gun and pulled the trigger to protect himself.  The gun went off.  Wilson testified he did

not know a bullet hit appellant until he told Wilson he was shot.

Appellant recalled Wilson to clarify information he provided in a taped statement to

a private investigator.  He highlighted the statement by Wilson that after he shot appellant,

the two wrestled for several minutes.  Appellant also called Joyce Walls, the other

passenger in Gentry's car.  She testified appellant and Wilson had a verbal disagreement

that escalated quickly.  She testified she saw Wilson swing his cane toward appellant when

the men got out of the car.  Appellant also highlighted the absence of evidence presented

at trial to show forced entry into Wilson's apartment.

---

[3] Police officers testified at trial that Wilson related these events to them shortly after
their occurrence and provided a statement.

Following presentation of the evidence, the jury found appellant guilty of the offense as charged in the indictment. Punishment was assessed against appellant at twenty-five years confinement. This appeal followed.

Analysis

Appellant presents six points of error for our review. In his first two points, appellant contends the evidence was legally and factually insufficient to support his conviction. In appellant's remaining four points of error, he argues that this Court lacks jurisdiction to consider his appeal. We begin with appellant's challenge to our jurisdiction.

*Jurisdiction*

Appellant was convicted by the 227th Judicial District Court of Bexar County. He timely filed notice of appeal to the Fourth Court of Appeals, whose district includes Bexar County. *See* Tex. Gov't Code Ann. § 22.201(e) (Vernon 2004 & Supp. 2007). The appeal later was transferred to this court by the Supreme Court of Texas under the authority given it in chapter 73 of the Government Code.[4] Tex. Gov't Code Ann. § 73.001, et seq. (Vernon 2005).[5] Appellant's third, fourth, fifth and sixth issues challenge the validity of the transfer. He contends the transfer was void because it violated provisions of both the United States

_____

[4] "The supreme court may order cases transferred from one court of appeals to another at any time that, in the opinion of the supreme court, there is good cause for the transfer." Tex. Gov't Code Ann. § 73.001 (Vernon 2005). Appellant's appeal was among a block of twenty cases transferred from the Fourth Court to this court.

[5] "The court of appeals to which a case is transferred has jurisdiction of the case without regard to the district in which the case originally was tried and to which it is returnable on appeal." Tex. Gov't Code Ann. § 73.002(a) (Vernon 2005).

and Texas Constitutions, and did not give this court jurisdiction over his appeal. We will overrule the issues.

The record reflects that appellant was notified of the transfer of his appeal to this court. Our Supreme Court has set out the proper procedure for requesting transfer of an appeal from one court of appeals to another. *Miles v. Ford Motor Co.*, 914 S.W.2d 135, 137 n.2 (Tex. 1995). We agree with our sister court in El Paso that complaints about the transfer of cases by the Supreme Court are properly raised by the initiation of the procedure outlined in *Miles*. *See Arocha v. State*, No. 08-07-00108-CR, 2009 WL 1883733 (Tex.App.–El Paso June 30, 2009, no pet. h.) (mem. op., not designated for publication) (addressing challenge to its jurisdiction over transferred case). We see no reason why that procedure was unavailable to appellant to present his objections to the Supreme Court's order transferring his appeal, and thus conclude his third, fourth, fifth and sixth points of error have not been preserved for our review. Tex. R. App. P. 33.1.[6]

Even if we are mistaken about the necessity for appellant to pursue the procedure outlined in *Miles*, however, we could not sustain his challenge to our jurisdiction. Through his fourth, fifth and sixth points of error, appellant argues the Supreme Court's order transferring his appeal violated the Texas Constitution. His fourth point argues chapter 73 of the Government Code conflicts with provisions of Article 5 of our state's constitution; his fifth point argues the transfer violated the Due Course of Law provision of Article 1, Section

---

[6]Appellant implicitly recognizes the limitations on our ability to consider his challenge to the transfer order. His prayer for relief in this court, consistent with his first two points of error, asks only that we order his acquittal or a remand for a new trial. He asks for no relief consistent with his latter four points of error.

19; and his sixth point contends the statutory provisions for transfer of cases among courts of appeals are void exercises of legislative authority over the judiciary contrary to the separation of powers set out in Article 2, Section 1.

Article 5, Section 6 of the Texas Constitution provides for courts of appeals districts, and gives the courts of appeals appellate jurisdiction "co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." The same section later provides that the courts of appeals "shall have such other jurisdiction, original and appellate, as may be prescribed by law." Tex. Const. art. V, § 6. In *Bond v. Carter*, 72 S.W. 1059 (1903), the Texas Supreme Court cited the latter provision in rejecting a challenge to the constitutionality of an order transferring an appeal from one court of civil appeals to another under an 1895 statute. *See also Guzman v. State*, No. 03-02-00040-CR, 2002 WL 1988376 (Tex.App.–Austin August 30, 2002, no pet.) (mem. op., not designated for publication) ("The Texas Constitution and statutes provide for the transfer of appeals from one court of appeals to another"); *Witherspoon v. Davis*, 163 S.W. 700, 702 (Tex.Civ.App.–Austin 1914, orig. proceeding) (citing *Bond*, rejecting challenge to court's power to enforce judgment in transferred case). *Bond* provides a sufficient answer to appellant's contentions the transfer of his appeal to this court violated the Texas Constitution.

By his third issue, appellant contends the provisions of Texas law permitting the transfer of appeals from one intermediate appellate court to another violate the Equal Protection Clause of the Fourteenth Amendment because the transfer interferes with the right of voters to elect the judiciary.[7]  Observing that voters in the Fourth District elect justices to the Fourth Court of Appeals and transfer of his appeal to the Seventh Court of Appeals means it will be decided instead by justices elected by voters living in the Seventh District, appellant reasons that transfer of appeals of cases arising in the Fourth District deprives voters of the right to elect the appellate judges who will decide cases arising in their district.  Appellant does not demonstrate, however, that he has standing to litigate the Equal Protection rights of Fourth District voters.  *See, e.g., Gray v. Sanders*, 372 U.S. 368, 375, 83 S.Ct. 801, 9 L.Ed.2d 821 (1963) (litigant qualified to vote in elections had standing to challenge voting processes).  Moreover, he presents no persuasive argument that the transfer of an appeal from one Texas court of appeals to another effectively impinges on those rights.

We overrule appellant's third, fourth, fifth and sixth points of error.

---

[7]Appellant recognizes there can be no federal constitutional right of voters to elect the judiciary, as is made clear by the constitution's provision for appointment of federal judges.  U.S. Const. art. III.  His argument is that our state, having granted the voters the right to vote for judges, may not deny a voter the equal protection of the law in its exercise. *See Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) ("Once the franchise is granted to the electorate, lines may not be drawn which are inconsistent with the Equal Protection Clause of the Fourteenth Amendment").

*Sufficiency of the Evidence*

Appellant's first two points of error challenge the sufficiency of the evidence to support his conviction. In reviewing issues of legal sufficiency, an appellate court views the evidence in the light most favorable to the verdict to determine whether, based on that evidence and reasonable inferences drawn from the evidence, a rational jury could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001), *citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). If, given all of the evidence, a rational jury would necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95, *citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to do so. *Hooper v. State,* 214 S.W.3d 9 (Tex.Crim.App. 2007), *citing Guevara v. State,* 152 S.W.3d 45, 49 (Tex.Crim.App. 2004).

A legal sufficiency analysis requires an appellate court to consider all the evidence admitted that will sustain the conviction. *Hernandez v. State,* 190 S.W.3d 856, 863-64 (Tex.Crim.App. 2006). As fact finder, the jury is the exclusive judge of the credibility of witnesses and the weight to be afforded their testimony. *Id.* A reviewing court must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, quoting *Jackson*, 443 U.S. at 318-19.

A factual sufficiency review of the evidence is "barely distinguishable" from the legal sufficiency review under *Jackson v. Virginia*. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Id.; Watson v. State*, 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we again consider all the evidence, but now in a neutral light. *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414.

A person commits the offense of burglary of a habitation when that person, (1) without the effective consent of the owner, (2) enters a habitation, (3) with the intent to commit a felony or theft. Tex. Penal Code Ann. § 30.02(a)(1) (Vernon 2003). Appellant's argument focuses on the evidence of the first element of the offense.[8] Specifically, appellant argues the State failed to prove beyond a reasonable doubt he entered Wilson's apartment without Wilson's effective consent. We disagree.

Consent means assent in fact, whether express or apparent. Tex. Penal Code Ann. § 1.07(a)(11) (Vernon 2003). Wilson testified he thought he locked his front screen door

---

[8] *See McDuff v. State,* 939 S.W.2d 607, 623 (Tex.Crim.App. 1997) (State bears burden of proving, whether by direct or circumstantial evidence, all of the elements of the charged offense beyond a reasonable doubt).

when he returned home from playing pool. When he heard his front door squeak, he grabbed his pistol and placed it in his back pocket. Appellant pulled open the door as Wilson entered the living room. Appellant "locked [Wilson] up against the couch," hit him,[9] and the two wrestled against the door frame.[10] He also testified appellant did not have his permission to enter his apartment, to walk into his living room, or to assault him.

The testimony of Wilson is sufficient to establish the absence of effective consent. *See Ellett v. State,* 607 S.W.2d 545, 550 (Tex.Crim.App. 1980); *Lagunas v. State,* 187 S.W.3d 503, 521 (Tex.App.–Austin 2005, pet. ref'd) (court found legally sufficient evidence, based on testimony at trial, to support the inference that appellant did not have permission or effective consent to enter the house). *See also Hardy v. State,* No. 05-06-00549-CR, 2007 WL 1585741, *2 (Tex.App.–Dallas June 4, 2007, pet. ref'd) (mem. op., not designated for publication) (finding evidence factually sufficient to support burglary conviction when the owner of the house testified that she did not invite appellant into her house on the day of the incident); *Zarate v. State,* No. 01-03-00183-CR, 2004 WL 1119963, *4 (Tex.App.–Houston [1st Dist.] May 20, 2004, no pet.) (mem. op., not designated for publication) (reaching same conclusion).

Further, even if the door were open or unlocked at the time of appellant's entry and did not show signs of forced entry or fingerprints, such circumstances do not establish

---

[9] One officer testified that when he spoke with Wilson that night, Wilson complained of pain to his face where he was struck by appellant. The officer observed redness in the area Wilson said was causing him pain.

[10] Wilson testified that the couch is "[a]bout four steps" from the front door.

appellant had the effective consent of Wilson to enter his apartment. *Ellet,* 607 S.W.2d at 550. The Penal Code does not require forced entry to support the charge of burglary. *Id.* at 549. Indeed, even one who enters through an open door could do so without effective consent. *Id. See also Blackmon v. State,* No. 07-01-0495-CR, 2002 WL 31627094, * 3 (Tex.App.–Amarillo Nov. 21, 2002, no pet.) (mem. op., not designated for publication) (finding the testimony of the owner of a residence that she did not give consent to the defendant to enter the premises sufficient to establish lack of consent and noting that even if the door is left open, it does not mean the perpetrator had permission to enter), *citing Marinez v. State,* 636 S.W.2d 732, 734 (Tex.App.–Corpus Christi 1982, no pet.) (finding ample evidence of a lack of consent in the testimony of the owner of the house that she did not give appellant permission to enter her home).

Likewise, Wilson's testimony that appellant sometimes brought food to him and that the two of them often sat by his front porch and drank coffee together does not diminish Wilson's trial testimony that on the occasion in question appellant did not have his consent to enter his apartment. *See Rangel v. State,* 179 S.W.3d 64, 69 (Tex.App.–San Antonio 2005, pet. ref'd) (finding evidence legally sufficient and concluding that the jury could have reasonably believed the statement that there "have been times when [appellant] has been allowed to stay at my house, but he didn't have permission to come in the house today" despite earlier testimony that appellant "always had permission" to enter her home).

Viewing the evidence in the proper light, we find the evidence to be both legally and factually sufficient to support appellant's conviction.  We overrule appellant's first two points of error and affirm the judgment of the trial court.


James T. Campbell
Justice


Do not publish.